635 So.2d 466 (1994)
V. C. NORA, JR. BUILDING & REMODELING, INC., Plaintiff-Appellee,
v.
STATE of Louisiana, Through DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 93-1469.
Court of Appeal of Louisiana, Third Circuit.
March 30, 1994.
*467 Robert C. Thomas, Natchitoches, for V.C. Nora, Jr. Building & Remodeling, Inc.
David Carlyle Voss, Baton Rouge, for State, Through Dept. of Transp. and Development.
W.P. Wray, Jr., Baton Rouge, for LA Associated Gen. Contractors.
*468 Before KNOLL and COOKS, JJ., and CULPEPPER[*], J. Pro Tem.
KNOLL, Judge.
This appeal arises out of the rejection of a bid on a state construction project. The trial court held the Department of Transportation and Development (DOTD) violated LSA-R.S. 38:2212 when it did not award the project to the lowest bidder, allegedly V.C. Nora, Jr. Building and Remodeling, Inc. (Nora). DOTD appeals this judgement.

FACTS
DOTD solicited bids for two construction projects to be carried out in Natchitoches Parish. The deadline for submitting bids was 10:00 a.m., June 23, 1993. Nora deposited his bid for the projects in the U.S. mail via Express Mail next day delivery at approximately 9:30 a.m. on June 21, 1993. The package was addressed:
Louisiana Department of Transportation and Development
1201 Capital Access Road
Headquarters Administration Building, Room 422
Baton Rouge, LA 70802
It is stipulated that the package arrived in the mail room of DOTD Headquarters at approximately 12:00 noon on June 22, 1993. For whatever reason, the package was not routed to room 422 by the 10:00 a.m. deadline of the following day.
After Nora's bid was rejected as being untimely, Nora filed this suit alleging its bid was the lowest submitted and seeking to enjoin the awarding of the contract to Pack Unlimited. This suit was instituted through summary proceedings as provided for in LSA-R.S. 38:2220. DOTD pleaded exceptions of improper venue, no right of action and no cause of action. These exceptions were overruled by the trial court. At trial, DOTD sought to prove not only that the bid was untimely submitted, but also the form of the bid was so defective that DOTD would have been required to reject the bid even if it had been timely. While not addressing the issue of the bid form, the trial court did explicitly find the bid was timely submitted and enjoined DOTD from awarding the contract.
DOTD appeals this judgment, contesting both venue and the merits of the trial court's holding. We first address the venue issue before proceeding to the merits of the case.

EXCEPTION OF VENUE
DOTD contends the trial court erred when it overruled DOTD's exception of improper venue. DOTD asserts venue in this action is controlled by LSA-R.S. 13:5104(A), the general venue provision for suits against the State. DOTD argues that the cause of action in the case sub judice arose in East Baton Rouge parish since this is where the request for bids emanated, where they were returned, and where the decision of which bid to accept was made. However, for the reasons that follow, we believe venue is proper in Natchitoches Parish.
We believe venue is based on the interplay of three separate venue provisions.
First, the most general provision is LSA-C.C.P. art. 76.1, which pertains to actions on contracts. It provides:
"An action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract."
The next provision, in order of specificity, is LSA-R.S. 13:5104(A), which is found in Chapter 32, Part XV, Suits Against State, State Agencies or Political Subdivisions, provides:
"All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises."
*469 Finally, the most specific provision is found in Chapter 10 of Title 38 and provides the statutory law governing public contracts. The first section of the Chapter is R.S. 38:2181, entitled "Venue of suits". This section provides, in pertinent part:
"A. A suit to annul a public contract on the ground of fraud, illegality, or violation of the contract, may be instituted against a contractor either in the parish of the domicile of the contractor or in the parish where the real or personal property involved is located, or in the parish, or any one of the parishes wherein the work under the contract is to be performed.
B. A suit arising under any public contract regarding the construction, alteration, or repair of any public works or for the purchase of materials or supplies, may be instituted either in the parish in which the public entity is located or in any other parish where, by law, such action may be instituted."
Initially, we note that Nora contends 38:2181(A)'s language, "the parish wherein the work under the contract is to be performed", is authority for finding venue in Natchitoches Parish. However, we believe Nora's reliance on 38:2181(A) is misplaced. Pretermitting DOTD's argument that a suit to enjoin the awarding of a contract is not "A suit to annul a public contract", we find paragraph A is limited to suits "instituted against a contractor" and is not intended to be applied to the State. Rather, as DOTD argues in brief, we believe section 38:2181(B)'s language, "A suit arising under any public contract ... may be instituted ... in the parish in which the public entity is located ...", clearly indicates this is the proper paragraph to be applied to the State. Further paralleling DOTD's position, we agree that 38:2181(B)'s provision of venue in either the public entity's domicile or "any other parish where, by law, such action may be instituted", incorporates the language in 13:5104(A), "the parish where the cause of action arises". From this point, DOTD concludes "East Baton Rouge is clearly the parish in which the cause of action arises in this case since it is the parish where the receipt of bids took place and all conduct regarding the department's decision the award [sic] of this contract took place." However, on this final conclusion, we cannot agree with DOTD.
The term "cause of action" has consistently eluded precise definition. See Commercial Nat. Bank v. First Nat. Bank, 603 So.2d 270 (La.App. 2nd Cir.1992), writ denied, 605 So.2d 1151 (La.1992). In Commercial Nat. Bank[1], the court was faced with a venue issue when a Shreveport bank sued the Louisiana Housing Finance Agency (LHFA) over a trust agreement in which the bank was trustee. At trial, the bank had successfully defended venue in Caddo Parish. On appeal, LHFA asserted that under 13:5104, East Baton Rouge Parish was the only proper venue. The Second Circuit interpreted 13:5104 by reading that provision in pari materia with the Code of Civil Procedure article controlling venue in contract actions, LSA-C.C.P. Art. 76.1. This article provides not only for the traditional venue of "where the contract was executed", but includes the more modern concept of venue where any work "was performed or was to be performed". Thus the Second Circuit found venue was proper in Caddo Parish as well as in East Baton Rouge Parish. We believe this is the most logical way to give definite parameters to the nebulous term cause of action.
Under this interpretation, there is no question that venue is proper in Natchitoches Parish since this is the parish where the work was to be performed. The ruling of the trial court was correct.

REVIEW ON THE MERITS
In reviewing the substantive issues on appeal, we address whether Nora's bid was timely submitted and whether Nora properly *470 complied with the bid format required by law and DOTD specifications. However, before doing so, we note that the prohibitory nature of the public contract laws has long been recognized:
"The public contract law requires that all public work done by a public body be advertised for competitive bids and be awarded to the lowest responsible bidder. La.Rev.Stat. 38:2211-26. This statutory law is a prohibitory law, founded on public policy, which was enacted in the interest of the taxpaying public. The purpose of the law is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant or extortionate prices." Airline Const. v. Ascension Parish, 568 So.2d 1029 (La.1990), citing Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (La.1943).
To carry out this prohibitory nature, the public contract laws demand strict adherence to all the statutory and administrative requirements of the bidding process. LSA-R.S. 38:2212(A)(1)(b) provides:
"The provisions and requirements of this Section, those stated in the advertisements for bids, and those required on the bid form shall not be considered as informalities and shall not be waived by any public entity."
It is against this background that we review DOTD's assignments of error.

SUFFICIENCY OF DELIVERY METHOD
DOTD contends that Nora, by sending its bid via Express Mail, failed to adhere to statutory requirements, and therefore DOTD is not responsible for the bid not reaching the bid opening location before 10:00 a.m.
LSA-R.S. 38:2212(A)(1)(c) provides, in part:
"... each bid shall be either hand delivered by the bidder or his agent in which instance the deliverer shall be handed a written receipt, or such bid shall be sent by registered or certified mail with a return receipt requested."
At trial, Randy Price, supervisor of customer services for the Natchitoches Post Office, testified that Express Mail, registered mail and certified mail were three distinct forms of mail. Furthermore, Express Mail apparently does not result in the sender receiving a return receipt. Not only is this Court under the general duty to apply a clear and unambiguous law as it is written, LSA-C.C. Art. 9, the legislature has further admonished us to consider no public contract provision as a mere formality, R.S. 38:2212(A)(1)(b). We cannot find that submitting the bid via Express Mail complied with the explicit provisions of 38:2212(A)(1)(c). Therefore Nora does not have a cause of action based on the failure of its bid to be timely directed to the bid opening location.

VALIDITY OF NORA'S BID FORMAT
DOTD next contends that the trial court erred in granting the injunction since Nora's failure to specify unit prices in its bid violates the contract specifications and renders the bid fatally defective. Thus, DOTD argues, Nora's bid could never form the basis for awarding the contract.
DOTD asserts that R.S. 38:2212(A)(1)(a) requires it to let a public contract "... to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised ...". (Emphasis added.) The construction proposal soliciting bids from contractors states the bids must be prepared in accordance with the DOTD publication, "La. Standards and Specifications for Roads and Bridges" (the Gold Book). Section 102.07 of the Gold Book states: "... A unit bid price shall be specified in words,... for each pay item ... for which a quantity is given ...". (Emphasis added.)
DOTD also calls the court's attention to the "general bidding requirements" outlined in the bid package DOTD supplies to contractors bidding construction proposals. This standard form provides:
"It is understood by the bidder that the quantities given in this proposal are a fair approximation of the amount of work to be done and that the sum of the products of the approximate quantities multiplied by *471 the respective unit prices bid shall constitute gross sum bid, ..." (Emphasis added.)
This bid package also contains a standard bid form. This form has four columns; item number, quantity, unit of measure, and unit price. The first three columns are filled in by DOTD and correspond to the site work and material requirements of the particular project. The contractor is only required to fill in the price at which he can provide the specified materials and site work. While some items are measured in lump sums requiring a total price, other items are measured in a given number of units and require a price per unit. Instead of filling in a unit price in that column, Nora filled in a number representing the total price for the entire quantity required of that item. A portion of Nora's bid is reproduced below.

When the amounts given by Nora are multiplied by their respective quantities, Nora's bid exceeds $41,000,000. Conversely, if the item amounts are taken as the total for that item, then the bid is $239,358.[2] It is DOTD's basic contention that it must interpret Nora's bid as being in excess of $41 million. On the other hand, Nora argues $239,358 is the only reasonable interpretation of the bid, and therefore DOTD acts arbitrarily by interpreting the bid to be over $41 million.
Citing R.S. 38:2212(A)(1)(b)'s admonishment not to regard contract requirements as mere formalities, DOTD argues it is allowed no discretion in deviating from the requirement of unit prices. Thus, contends DOTD, not only does the law demand that all bids be tallied according to their literal reading, but also such literal interpretation is essential to the integrity of the public bidding process.
To counter DOTD's assertion that it must interpret all bids literally, Nora relies on Barber Bros. Contracting Co. v. DOTD, *472 529 So.2d 442 (La.App. 1st Cir.1988), rev'd, 533 So.2d 1226 (La.1988). In Barber Bros., H & S Construction Co. (H & S) submitted a bid with certain irregularities as shown below.

DOTD awarded the contract to H & S after securing from H & S an affidavit stating the cost for the "side drain pipe" was $13.75 per linear foot and the cost for "mobilization" was $15,000.00. Barber Bros. Contracting, the next lowest bidder, brought suit to annul the award of the contract. The trial court found DOTD's actions were not arbitrary and were a proper clarification of the H & S bid. The First Circuit found the bid was clearly ambiguous and reversed the trial court. The Supreme Court then granted writs, and without further explanation, reversed the Court of Appeals and reinstated the trial court's judgment. The only guidance given by the court was a brief concurrence by Justice Calogero:
"CALOGERO, J., concurs, although preferring to bring the case up for full treatment. There is no ambiguity in the relevant bid language for there is no reasonable interpretation other than the construction given the bid by the district court."
Nora contends this case clearly demonstrates DOTD may and has accepted bids that are irregular in form. However, DOTD correctly points out that even if the H & S bid in the Barber Bros. case was read literally in it's unclarified form, the total bid was still less than the next lowest bidder. This is clearly not the case with Nora's bid, since by its literal reading the bid exceeds $41 million. We cannot accept Nora's contention that the Barber Bros. case gives DOTD the authority to disregard the strict requirements of the public contract laws.
While under the present facts it is apparent Nora intended its bid to be $239,358 and not $41 million, this conclusion requires an interpretation outside the four corners of the bid. We cannot deny that by ordering DOTD to accept a bid subject to different interpretations, we may be injecting ambiguity into the public bidding process. DOTD emphatically warns and with which we agree, that such ambiguity would erode the objective basis upon which contracts are awarded and thereby open a "Pandora's box" to the favoritism and corruption that the public bid laws were established to prevent.
Even though DOTD's rigid specifications as to the bid form may have seemingly harsh results, any interpretation but the most literal would contravene the stricti juris nature of the public contract laws. As our brethren on the Fourth Circuit have noted:
"[B]idding in accordance with the advertisement is essential to satisfy the purposes for which the public bid laws were enacted. If public bidding is an honest attempt at getting the best value for tax moneys, then every bidder must be held bound by the terms of the advertising. To allow anything less than a bid conforming on its face to the advertised specifications would constitute an open invitation to the kind of impropriety and abuse the public bid laws were designed to prevent." Gibbs Const. v. Board of Sup'rs of L.S.U., 447 So.2d 90 (La.App. 4th Cir.1984). (Citations omitted)
*473 Nora's bid clearly did not, on its face, conform to the specifications set out by DOTD in its solicitation for bids. This bid could not have formed the basis for DOTD granting the contract to Nora, and therefore Nora has no cause of action.
In conclusion, we find Nora's delivery method did not fulfill the statutory requirements. Furthermore, Nora's bid was fatally defective in that it did not provide unit prices as required by DOTD specifications. DOTD does not act arbitrarily by rejecting bids that do not contain unit prices. The judgment of the trial court, enjoining DOTD from awarding the contract based on a violation of R.S. 38:2212, is reversed.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] While Commercial Nat. Bank dealt with 13:5104(B), which provides "parish in which the cause arises" as opposed to "parish in which the cause of action arises" as 13:5104(A) does, this is of no moment since "cause of action" is a broader concept than "cause". See Urban Mgt. v. Shreveport Airport Auth., 602 So.2d 1055 (La. App. 2nd Cir.1992), writ denied, 606 So.2d 542 (La.1992).
[2] Pack Unlimited, Inc., the contractor chosen by DOTD as the lowest bidder, bid the project at $253,117.