677 So.2d 1109 (1996)
GUARANTY BANK OF MAMOU, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the OFFICE OF STUDENT FINANCIAL ASSISTANCE, Defendant-Appellant.
No. 96-196.
Court of Appeal of Louisiana, Third Circuit.
July 17, 1996.
*1110 Christopher Brent Coreil, Villa Platte, for Guaranty Bank of Mamou.
Sherry L. Tew, Baton Rouge, for State of La., Office of Student Financial Asst.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
The defendant, the State of Louisiana, through the Office of Student Financial Assistance (OSFA), appeals the judgment of the district court denying its exception of venue. After reviewing the record, we affirm.

FACTS
The underlying basis for this suit is OSFA's refusal to honor its contract of guaranty on defaulted student loans presented by Guaranty Bank of Mamou. OSFA refused to honor the loans when a criminal investigation initiated by the Office of the Inspector General, U.S. Department of Education, determined that Ted D. Smith, a vice-president with Guaranty Bank, fraudulently signed the borrowers' names on the majority of the loans presented for repayment.
On February 26, 1992, OSFA made inquires to the United States Department of Education, to determine if it was possible for Guaranty Bank to cure the loans so that they could be considered reinsured. The Department of Education responded by stating that if Guaranty Bank obtained either a receipt of a signed repayment agreement consistent with the ten year requirements or one full payment from the borrower, the loans would be cured. On April 24, 1992, OSFA returned the forty-five claim requests to Guaranty Bank, stating that because of the investigation it was unable to pay these accounts. OSFA also gave Guaranty Bank the information on curing the loans.
On July 23, 1992, the Department of Education retracted its statement on curing the fraudulent loans. Instead, the Department of Education stated that "[i]t is the Secretary's policy that any fraudulent activity performed by a holder or its agent with respect to a Guaranteed Student Loan, insured or unreinsured, makes that loan forever ineligible for reinsurance." This information was passed on to Guaranty Bank by OFSA, who denied payment on all of the fraudulent loans.
On February 2, 1993, Guaranty Bank filed a "suit on note" naming as defendants, OSFA and a student borrower, whose signature had already been determined as forged. As a result, the Inspector General's Office reopened the criminal investigation, during which it was determined that thirty-four borrowers' signatures had been forged, four *1111 were genuine, and two were inconclusive. OSFA agreed to pay all notes containing genuine or inconclusive signatures, but refused to pay the forged notes.
On August 8, 1995, Guaranty Bank filed the present suit in Evangeline Parish, on the forty-one investigated claims, thirty-six of which contained forged signatures. OSFA paid the five notes with the legitimate or inconclusive signatures. Guaranty Bank alleges that several of the remaining thirty-six notes were cured between the time OSFA reported that the loans could be cured and the date it retracted that statement. The remaining notes were found to be fraudulent, but were not cured within that time frame. In its petition, Guaranty Bank alleged that OSFA was liable under a contract of guaranty and under a theory of detrimental reliance.
In response to the petition, OSFA filed a declinatory exception alleging that East Baton Rouge Parish is the only proper venue because that is where OSFA is located and where the cause of action arose. Thereafter, Guaranty Bank filed an amending and supplemental petition, adding as defendants the thirty-one student borrowers, alleging that OSFA, as guarantor, was liable jointly and in solido with each of the borrowers.
After a hearing on the motion, the trial court denied OSFA's exception of venue. OSFA filed a motion to reconsider, which was also denied by the trial court. As a result, this appeal by OSFA followed.

ASSIGNMENT OF ERROR
OSFA contends that the trial court erred in overruling its exception of venue for several reasons. First, it contends that under the general rule for venue, La.Code Civ.P. art. 42, venue is proper only where OSFA is domiciled, East Baton Rouge Parish. Next, OSFA alleges that under La.R.S. 13:5104(A), in a suit against a state agency, the proper venue is East Baton Rouge Parish, because that is the judicial district where the state capitol is located and the parish where the cause of action arose under either the contractual or detrimental reliance theories. OSFA also argues that under forum non conveniens, venue is improper in Evangeline Parish. Finally, OSFA contends that it is not solidarily liable with the student borrowers, therefore, venue is not proper under that principle of law.

LAW
In Jordan v. Central Louisiana Electric Co., Inc., 95-1270, p. 1 (La. 6/23/95); 656 So.2d 988, 989, the supreme court, determining that venue was proper in either parish where the contract was executed, under La. Code Civ.P. art. 76.1, held:
Article 76.1 provides that venue is proper in the parish where the contract is executed. A contract, including one executed in authentic form, may be executed in more than one parish. Such is the case here. Plaintiff executed the authentic act in Iberia Parish; defendant, in Rapides. In such a case, we construe Article 76.1 as authorizing venue in any of the parishes in which the contract was executed. Although Article 76.1 uses the singular word "parish," La.Code Civ.Pro. art. 5055 expressly provides that "[u]nless the context clearly indicates otherwise ... [w]ords used in the singular number apply also to the plural."
Our construction is consistent with our holding in Kellis v. Farber, 523 So.2d 843 (La.1988). Kellis held that the alternative optional venue provisions contained in La. Code Civ.Pro. articles 71 through 85 "are an extension, supplement and legal part of the provisions of article 42." 523 So.2d at 846. As a result, these alternative venue provisions are no longer exceptions to Article 42's "home base" venue that should be strictly construed as was formerly required under Hawthorne Oil & Gas v. Continental Oil, 377 So.2d 285 (La.1979). Rather, these alternative provisions are part and parcel of the general venue rule set forth in Article 42.
(Footnote omitted).
Thus, OSFA's argument that venue would only be proper, under La.Code Civ.P. art. 42, in the parish of its domicile, East Baton Rouge Parish, is incorrect. Venue would also be proper, under La.Code Civ.P. art. 76.1, in the parish where the contract of *1112 guaranty was executed, or the parish where any work or service was performed or was to be performed under the terms of the contract.
Venue, in this instance, would be proper in either Evangeline Parish or East Baton Rouge Parish, since the contract was executed in both parishes. Smith, the vice-president of Guaranty Bank, signed the "Basic Agreement to Guaranty Loans" in Evangeline Parish and then sent the agreement to Baton Rouge, where it was signed by the executive director for the Governor's Special Commission on Education Services.
A further exception to La.Code Civ.P. art. 42 is La.R.S. 13:5104. Section A of this statute provides that:
All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.
In V.C. Nora, Jr. Bldg. & Remodeling v. State, Through DOTD, 93-1469 (La.App. 3 Cir. 3/30/94); 635 So.2d 466, 469, this court stated:
The term "cause of action" has consistently eluded precise definition. See Commercial Nat. Bank v. First Nat. Bank, 603 So.2d 270 (La.App. 2nd Cir.1992). In Commercial Nat. Bank, the court was faced with a venue issue when a Shreveport bank sued the Louisiana Housing Finance Agency (LHFA) over a trust agreement in which the bank was trustee. At trial, the bank had successfully defended venue in Caddo Parish. On appeal, LHFA asserted that under 13:5104, East Baton Rouge Parish was the only proper venue. The Second Circuit interpreted 13:5104 by reading that provision in pari materia with the Code of Civil Procedure article controlling venue in contract actions, LSA-C.C.P. Art. 76.1. This article provides not only for the traditional venue of "where the contract was executed", but includes the more modern concept of venue where any work "was performed or was to be performed". Thus the Second Circuit found venue was proper in Caddo Parish as well as in East Baton Rouge Parish. We believe this is the most logical way to give definite parameters to the nebulous term cause of action.
(Footnote omitted).
In accordance with this court's decision in V.C. Nora, Jr. Building & Remodeling, venue in a suit against OSFA based on a contract of guaranty would be proper in the parish where the State Capitol is located, East Baton Rouge Parish; the parish where the contract was executed, Evangeline and East Baton Rouge Parishes; and the parish where any work or service was performed or was to be performed under the contract. Thus, Evangeline Parish is a proper venue since work or services performed or to be performed under the contract occurred or would occur there.
The "Policy and Procedure Manual" of the Louisiana Guaranteed Student Loan Program states:
9.1.1 Due Diligence of Holder in Pursuing Delinquencies and Ineligible Borrowers
A holder shall pursue a borrower who becomes delinquent in payment of his Stafford, SLS or PLUS and an ineligible borrower, in accordance with the procedures established by LASFAC for these purposes (see 9.2.1 and 9.2.2). Failure to comply with the practices outlined could result in the loss of the guarantee or delay the payment of claims and/or result in interest penalties."
9.1.3 Due Diligence of Holder in Filing Claims
If a borrower dies, becomes totally and permanently disabled, files bankruptcy, is an ineligible borrower or is more than 180 days delinquent, the holder may file a claim for reimbursement from LASFAC provided he has complied with all necessary procedures and deadlines described in this manual (see 9.2.4, 9.2.5, 9.2.6 and 9.2.7). Claims which fail to meet those requirements will be rejected by LASFAC, and if eligible must be cured by the holder according to LASFAC procedures for curing claims (see 9.2.8) before they may be re-filed with LASFAC for payment.

*1113 9.2.1 How Holder Pursues Delinquent subsidized or unsubsidized Stafford, SLS or PLUS Borrowers
A. When a borrower becomes delinquent on the principle and/or interest of a subsidized Stafford or the principle (only) of a SLS, PLUS or LA-OP (non-subsidized Stafford):
1. Pursue the borrower according to this procedure's Delinquency Due Diligence Timetable, and
2. Document the steps taken to pursue the borrower.
3. Request Preclaim assistance when the account becomes 90 days delinquent.
4. If the borrower defaults, file a claim with LASFAC according to its procedure on how to file default claims.
5. In the event a borrower has loans coming due on different dates (cascading delinquency) the lender must provide as part of each claim package a complete history of all due diligence activities in the last 180 days.
6. Noncompliance with the practices outlined in this manual could result in the loss of the guarantee or delay in the payment of a claim and/or result in interest penalties.
As can be seen from the above quoted material, OSFA dictates that a lender, such as Guaranty Bank, must perform many specified procedures, or "due diligence activities" (not all are listed above), according to its timetable or risk the chance that OSFA will not honor the loan or repayment will be delayed. Many of these procedures, such as those pertaining to the lender pursuing the borrower, will occur in Evangeline Parish. Most importantly, the main function of this contract, the repayment of the loan by OSFA, will occur in Evangeline Parish since Guaranty Bank will receive payment there and not in East Baton Rouge Parish. For these reasons, we find that venue is proper in Evangeline Parish and the trial court correctly denied OSFA's exception of venue.
The determination that venue is proper in Evangeline Parish under the contract of guaranty pretermits any discussion on the issues of detrimental reliance, forum non conveniens, and solidary obligors.

CONCLUSION
For the foregoing reasons, the judgment of the trial court denying the Office of Student Financial Assistance's exception of venue is affirmed. The costs of this matter are deferred to the merits.
AFFIRMED.