865 So.2d 136 (2003)
BROADMOOR, L.L.C.
v.
ERNEST N. MORIAL NEW ORLEANS EXHIBITION HALL AUTHORITY.
No. 2003-C-1996.
Court of Appeal of Louisiana, Fourth Circuit.
December 22, 2003.
*137 Marguerite K. Kingsmill, Mark S. Senter, New Orleans, LA, for Relator, Broadmoor, L.L.C.
Michael E. Botnick, Howard E. Sinor, Jr., Ewell E. Eagan, Jr., Tina C. Santopadre, Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., New Orleans, LA, for Intervenor, W.G. Yates & Sons Construction Co./Landis Construction Co., L.L.C., A Joint Venture.
W.P. Wray, Jr., Wray & Pierce L.L.P., Baton Rouge, LA, for Amicus Curiae, Louisiana Associated General Contractors, Inc.
Kenneth M. Carter, Kenneth M. Carter, PLC, New Orleans, LA, for Intervenor, Southeast Louisiana Building and Construction Trades Council (Less and Except Plumbers and Pipefitters Local 60).
Phillip A. Wittman, Michael Q. Walshe, Jr., Julie A. Richards, Walter F. Wolf, Stone Pigman Walther Wittman, L.L.C., New Orleans, LA, for Respondent, The Ernest N. Morial New Orleans Exhibition Hall Authority And The Board of the Ernest N. Morial New Orleans Exhibition Hall Authority.
Russ M. Herman, Herman, Herman, Katz & Cotlar, New Orleans, LA, for Intervenors, *138 Frischhertz/Fisk Joiint Venture and Gallo Mechanical Contracts, Inc.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR.).
MICHAEL E. KIRBY, Judge.

STATEMENT OF THE CASE
Broadmoor, L.L.C. seeks review of the trial court's judgment denying its request for a preliminary injunction.
This litigation arises from the bidding process for construction of Phase IV of the Ernest N. Morial New Orleans Exhibition Hall. On August 8, 2003, the Ernest N. Morial New Orleans Exhibit Hall Authority (Authority) announced its intent to receive bids on the construction of Phase IV. Bids were received and opened on October 3, 2003. Three bids were received:

Yates/Landis $268,445,000.00
Broadmoor $275,000,000.00
McDonnell/PLC $278,235,000.00

The bidders were given the opportunity to review all bids. Broadmoor filed a protest to Yates/Landis' bid noting several irregularities. On October 15, 2003, the Construction Committee of the Authority held a hearing on the bids and voted to defer action on the bids to the full Authority without recommendation. The Authority held a hearing on the bids on October 22, 2003. At this hearing, the Authority was informed that Senators Boissiere and Bajoie had requested an opinion from the Attorney General on the issue of insurance provisions within a bid and the waivability of bid requirements.[1] The Authority did not accept any of the bids on that date.
Subsequently, Broadmoor filed its petition for temporary restraining order, preliminary injunction and permanent injunction on October 29, 2003. The trial court initially granted the temporary restraining order but later rescinded the order after a contradictory hearing. The Authority then accepted the bid of Yates/Landis as the lowest responsive and responsible bid and sent Yates/Landis notice of acceptance of the bid. A hearing on Broadmoor's request for a preliminary injunction was held on November 3, 2003. The trial court denied the request for a preliminary injunction, noting that while the Authority was "wrong, it was not arbitrary." Broadmoor informed the trial court of its intent to seek supervisory writs on November 12, 2003.[2] The trial court granted Broadmoor until November 22, 2003 to file its writ application. Broadmoor filed its application for supervisory writs with this Court on November 13, 2003. The Authority and Yates/Landis both filed opposition briefs on November 24, 2003. Interveners, Frischhertz/Fisk Joint Venture, Gallo Mechanical Contractors, Inc. and Southeast Louisiana Building and Construction Trade Council, filed a brief in support of the writ application on November 17, 2003. Louisiana Associated General Contractors, Inc. filed an amicus curiae brief on November 29, 2003.

DISCUSSION
Broadmoor argues that the trial court erred when it determined that the Authority was not arbitrary in its decision to accept the Yates/Landis' bid as the lowest responsive bid. Broadmoor contends that the Yates/Landis' bid is not responsive due to several irregularities: (1) failure to include a certificate of insurance or letter of insurability for builders' risk insurance; (2) failure to attend pre-bid meetings and failure to purchase full size set of bidding *139 documents; (3) failure to submit resolution of authority; (4) failure to accurately list and describe qualifications and experiences; (5) failure to submit affidavit evidencing commitment to subcontract or purchase fifteen percent of value of project from small and emerging businesses in Louisiana; and (6) failure to submit non-collusion affidavit.

Builders' Risk Insurance
Broadmoor suggests that the Yates/Landis' bid is not responsive, as it did not include a letter of insurability concerning builders' risk insurance. The Authority and Yates/Landis contend that the bid requirements did not mandate a letter of insurability concerning builders' risk insurance. Article 14 of the bid requirements state:
ARTICLE 14INSURANCE REQUIREMENTS
14.1 Bidders shall deliver Certificates of Insurance or statement of insurability acceptable to the Owner with their bids, to demonstrate compliance with Article 11 of the Supplementary Conditions.
14.2 Failure of the Successful Bidder to deliver said Certificates of statement of insurability with the Bid may result in the Bid being deemed incomplete and non-responsive. In the event of such failure, the Owner reserves the right to offer the Contract to the next lowest responsive Bidder or re-advertise the project to request a completely new set of bids.
Article 11 of the supplementary conditions provide for the insurance and bonds that must be obtained by the contractor. Section 11.0 of Article 11 deals with the general insurance requirements. Section 11.1 sets forth the requirements for contractor's liability insurance, which includes comprehensive general liability, workers' compensation and employers' liability insurance, comprehensive automobile liability, watercraft liability and an umbrella policy. Section 11.2 provides that the Owner will also purchase liability insurance. Section 11.3 requires that the Contractor purchase and maintain property insurance, which includes "`all risk' (as defined in the policy form) insurance for physical loss or damage in the amount equal to the Contract Sum," which is also known as builders' risk insurance. Section 11.4 states that the Owner may purchase loss of use insurance. Section 11.5 mandates that the Contract provide a "good and solvent Performance Bond acceptable to the Owner in the amount of one hundred percent (100%) of the amount of the Contract Sum, to assure the faithful performance of the Contractor's duties." The section also requires the Contractor to furnish the Owner with a payment bond. Section 11.6 requires the Contractor to obtain contractual liability insurance to protect the Owner for any indemnification claims the Owner may assert.
Article 14 states that there must be an indication of compliance with all of Article 11 of the supplementary conditions. Article 14 does not specifically limit compliance to certain provisions of Article 11. Thus, a responsive bid must show that the contractor will be able to obtain all the insurance and bond requirements of Article 11, including builders' risk insurance. While a certification of insurance concerning builders' risk insurance may not be obtainable at the time the bid is submitted, the contractor can obtain a letter of insurability from the insurance company (both Broadmoor and PC/McDonnell provided such letters in their bids).
The Attorney General in the opinion rendered on October 29, 2003 concluded that the bid requirements mandated the inclusion of a certificate of insurance or letter of insurability as to builders' risk insurance. He stated that:

*140 Thus, the documents which set out the requirements for the phase IV of the Convention Center required all of the bidders to attach certificates of insurance or statements of insurability to the bid.
The word "shall" as used in statutes, contracts, or the like, is generally imperative or mandatory. In common or ordinary parlance, the term "shall" is a word of command, and one which must be given a compulsory meaning. It has the significance of excluding the idea of discretion, and operates to impose a duty which must be enforced, particularly when used in cases involving public policy or the public interest. Given the use of the term "shall" in these documents, it is our opinion that as a matter of law, the requirements set forth in the Bid Form Exhibit No. 2 and Art. 14.1 of the Instructions to Bidders are mandatory. A review of the relevant documents indicates that the answer to question # 2 must be in the affirmative. Specifically, Exhibit No. 2 provides that the bidder shall attach the insurance certificates or statements of insurability from bidder's insurance to this page, and Art. 14 of the Instructions to Bidders provides that the bidders shall deliver certificates of insurance or statement of insurability acceptable to the owner with their bids to demonstrate compliance with Art. 11 of the Supplementary Conditions. This sentence clearly indicates that the bidder is required to deliver the certificates of insurance or statement of insurability with regard to all of the particular insurances listed in Art. 11 of the Supplementary Conditions. This also requires the attachment of all certificates of insurance or statements of insurability for all of the insurance coverage required and the Supplementary Conditions found in Art. 11. Art. 14 also would require a particular type of coverage to the extent that subpart 11.3 provides that there should be a particular type of coverage.
In answer to question # 3, we must point out that Louisiana law provides that a public entity may waive deviations that are not substantive in nature; however, it may not treat substantive requirements of the Bid Law, the advertisement for bid, and the Bid Forms as mere informalities in order to justify its decision to waive a deviation in a bid. In this case, the Bid Form and the Construction Documents both contain the word "shall." When reading this documents they must be given the interpretation that best conforms to the purpose of the law and the public interest. Clearly, the wording of these provisions connotes that the inclusion of the certificates of insurance or the statements of insurability in compliance with Art. 11 is mandatory. The bidders are not provided with a choice as to which insurance to provide, but instead are instructed to demonstrate compliance with "Art. 11 of the Supplementary Conditions." Indeed, the bidders are reminded in section 14.2 of article 14 that the failure of the successful bidder to deliver said certificates or statements of insurability with the bid may result in the bid being deemed incomplete and non-responsive. The section further provides that in the event of such failure, the owner reserves the right to offer the contract to the next lowest responsive bidder or re-advertises the project to request a completely new set of bids. This section does not provide the entity with the ability to waive a particular bidder's failure to provide any one of the insurance coverages listed in Art. 11. This would include a prohibition on the entity form waiving a bidder's failure to provide coverage enumerated in section 11.3 of Art. 11. Consequently, the failure of the bidder *141 to furnish a certificate of insurance or statement of insurability with regard to section 11.3 of Art.11 is a substantive deviation from the requirements of the construction documents which cannot be waived by the terms of the documents. See La. R.S. 38:2211 et seq. and Wallace Drennan, Inc. v. Sewerage and Water Board of New Orleans, 798 So.2d 1167 (La.App. 4th Cir.2001).
This conclusion is also consistent with section 4 of the Instructions to Bidders. That section entitled "Interpretation or Correction of Bid Documents provides at section 4.5, that should there be any discrepancy in the information contained in these documents, the more stringent requirements shall cover it." This section mandates the inclusion of all of the insurances set out in section 11. Accordingly, failure to submit the certificate of insurance or statement of insurability for Builders Risk Insurance cannot be waived by the board. When this section is interpreted in light of the purpose of the statute to provide protection to the tax paying public it clearly leads to the conclusion that the bidders on this particular job were required to produce copies of all insurances enumerated in the subparts of Art. 11 of the Supplementary Conditions.
The Public Bid Law is intended to advance the interests of the taxpaying citizens and to prevent public officials from awarding contracts on an arbitrary basis. La. R.S. 38:2211, et seq. A public entity cannot waive deviations that are substantive in nature when awarding a public contract to the lowest responsible bidder. Boh Bros. Const. Co, L.L.C. v. Dept. of Transp. and Development, supra; Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, XXXX-XXXX (La.App. 4 Cir. 10/03/01), 798 So.2d 1167. La. R.S. 38:2212 A(1)(b) provides: "The provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be waived by any public entity."
In Stafford Const. Co., Inc. v. Terrebonne Parish School Bd., 560 So.2d 558 (La.App. 1 Cir.1990), the First Circuit found that the contractor Acadian's bid form lacked a necessary and substantial part, the corporate resolution. The requirement that a corporate resolution be attached to the bid form was necessary to validate the authority of the corporation to submit a bid. The Third Circuit, in V.C. Nora, Jr. Bldg. & Remodeling, Inc. v. State of Louisiana, Through the Dept. of Transp. and Development, 93-1469 (La. App. 3 Cir. 3/30/94), 635 So.2d 466, held that plaintiff's bid was correctly rejected because it failed to comply with mandatory, advertised requirements for mailing or delivering the bid or to provide unit prices.
As noted in the Attorney General's opinion and the jurisprudence, La. R.S. 38:2212 A(1)(b) has been constructed to preclude a public entity from waiving substantive provisions and requirements of the Public Bid Law, the advertisement for bids and the bid forms. The public entity may waive deviations that are not substantive in nature. However, it may not treat substantive requirements of the Bid Law, the advertisement for bids and the bid forms as mere informalities in order to justify its decision to waive a deviation in a bid. Boh Bros. Const. Co., L.L.C. v. Department of Transp. and Development, 97-0168 (La.App. 1 Cir.7/14/97), 698 So.2d 675; Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, supra.
Based on the above precedents, we find the Authority abused its discretion when it selected Yates/Landis' bid as the lowest responsive bid. The failure of Yates/Landis to include a certificate of insurance or *142 statement of insurability concerning builders' risk insurance was a substantive deviation to the bid requirements, which failure could not be waived by the Authority. The Authority acted arbitrarily and capriciously when it attempted to waive the requirement and award the contract to Yates/Landis. Further, the trial court erred, as a matter of law, in determining that the Authority was not arbitrary and denying Broadmoor's request for a preliminary injunction.

Failure to attend pre-bid meetings and Failure to purchase set of bidding documents
Broadmoor also argues that the Yates/Landis' bid is not responsive because a representative of Yates/Landis did not attend both pre-bid meetings and Yates/Landis did not purchase a full size set of the bidding documents. The bid requirements mandated attendance at both pre-bid meetings and the purchase of a full size set of the bidding documents. A review of the attendance logs for the two pre-bid meetings reveals that representatives of Yates attended both meetings on August 22, 2003 and September 5, 2003. However, Landis attended only the second meeting on September 5, 2003. No one signed in as a representative of Yates/Landis at either meeting.[3] Further, the Authority's records indicate that while Yates purchased a full size set of the bidding documents, Landis only purchased a half size set of the documents.
La. R.S. 38:2212 A provides that all public work meeting the requirements for public bids "shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised." The statute furnishes general requirements for advertising. In Gibbs Const. Co., Inc. v. Board of Sup'rs of Louisiana State University, 447 So.2d 90, 92 (La.App. 4 Cir.1984), this Court stated:
Concerning those projects for which the statute requires advertisement, bidding in accordance with the advertisement is essential to satisfy the purposes for which the public bid laws were enacted. If public bidding is an honest attempt at getting the best value for tax moneys, then every bidder must be held bound by the terms of the advertising. Jefferson Parish School Board v. Rowley Company, Inc., 350 So.2d 187 (La.App. 4th Cir.1977), writ denied, 352 So.2d 238 and 239 (La.1977). To allow anything less than a bid conforming on its face to the advertised specifications would constitute an open invitation to the kind of impropriety and abuse the public bid laws were designed to prevent. Williams v. Board of Supervisors of L.S.U., 388 So.2d 438 (La.App. 2d Cir. 1980).
In Gibbs, the "bid" submitted by Gibbs Construction Co. did not qualify as an acceptable bid because Gibbs was not represented at the pre-bid conference as required by the advertisement. As a result, the University refused to consider the "bid." This court held that the University's action was proper. The court noted that Gibbs' "bid" never attained the status of a bid which could compete with any other bids, because it did not qualify for consideration.
It is clear that at the time of the pre-bid meetings and the purchase of the bidding materials, the Yates/Landis joint venture did not exist. Thus, there could not be a representative from the joint venture at *143 the pre-bid meetings. The question then becomes is Yates/Landis, as a joint venture, disqualified as a responsive bidder because it did not attend the meetings and purchase the bidding documents as a joint venture?
The law on joint venture provides that partners in a joint venture may act on behalf of the joint venture. La. C.C. article 2814; Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159 (La.App. 3 Cir.1990); Smith v. Lonzo, XXXX-XXXX (La.App. 3 Cir. 2/5/03), 838 So.2d 918. However, the joint venture did not exist at the time of the meetings. Thus, the actions of Yates cannot be construed as acting on behalf of the joint venture. As Yates/Landis, a Joint Venture, did not attend the mandatory pre-bid meetings, it could not be a qualified responsive bidder.

Failure to submit resolution of authority
Broadmoor further argues that Yates/Landis failed to submit a corporate resolution indicating that the two companies were authorized to act as a joint venture in bidding for the construction contract. Yates/Landis attached two separate resolutions, one from each company, authorizing its officer to negotiate with Orleans Parish or any of its agencies, departments, boards, employees or agents. However, the corporate resolutions did not mention or reference the joint venture in any manner. Further, Yates/Landis did not submit an authorization from the joint venture authorizing anyone to negotiate with Orleans Parish or any of its agencies, departments, boards, employees or agents. This is another failure to comply with the bid requirements that is not waivable.
For the reasons stated above, we find that the trial court erred in denying Broadmoor's request for a preliminary injunction. In light of our conclusion, we need not address Broadmoor's remaining arguments.
Accordingly, the writ application is granted, the judgment of the trial court reversed and the injunction granted. The Ernest N. Morial New Orleans Exhibit Hall Authority is ordered to reject the Yates/Landis bid as non-responsive.
WRIT GRANTED; TRIAL COURT JUDGMENT REVERSED; INJUNCTION GRANTED.
NOTES
[1] The Attorney General issued an opinion on October 29, 2003, discussed infra.
[2] Broadmoor also filed a motion for devolutive appeal on November 12, 2003, which was granted on the same date.
[3] Yates and Landis executed a joint venture agreement on September 12, 2003, a week after the second meeting. The joint venture was to be called "Yates/Landis, a Joint Venture."